United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>  v.<br><br>STEVEN M. NEIL,<br><br>    Defendant.<br>                                                        / | No. C 14-00122 WHA<br><br>**ORDER DENYING DISCOVERY REQUEST FOR RAW NOTES AND INTERVIEW MEMORANDA** |

## INTRODUCTION

In this enforcement action by the Securities and Exchange Commission, defendant seeks discovery in response to his request for production and interrogatory, and specifically, raw notes and memoranda from the Commission's informal interviews with voluntary witnesses. For the reasons below, and subject to the last paragraph of the order, the discovery request is **DENIED**.

## STATEMENT

Prior to bringing this action, the Commission conducted a fact-gathering investigation of Diamond Foods, Inc. and its accounting for walnut-crop payments. In doing so, the Commission informally interviewed sixty voluntary witnesses beginning in April 2012. Because the interviewees came voluntarily — and not pursuant to a court-enforceable subpoena — there was no transcribed testimony from those interviews. Instead, the Commission has: (1) raw notes that were taken contemporaneously during those interviews by counsel and/or agents; (2) post-interview memoranda that reflected certain facts bearing on case theories; and (3) other

memoranda and written materials that "appl[ied] the facts learned in the investigation to the legal requirements for proving violations of federal securities laws at a trial in a district court action or at an administrative proceeding before an Administrative Law Judge" (Lee Decl. ¶¶ 11–14).

On January 9, 2014, the Commission began this action against defendant Steven M. Neil, Diamond's former Chief Financial Officer. This action was then reassigned to the undersigned judge following a notice of relation to civil matters against Diamond and others, who have since settled out. *See, e.g.*, *In re Diamond Foods, Inc., Securities Litigation.*, No. C 11-05386; *and Securities and Exchange Commission v. Diamond Foods, Inc.*, No. C 14-00123.

On the instant motion, defense counsel seek discovery via Request for Production No. 3 and Interrogatory No. 2 (Dkt. No. 26 at 1; Exh. 1 at 3–4; Exh. 3 at 4):

> **REQUEST FOR PRODUCTION NO. 3**
>
> All DOCUMENTS reflecting statements made to YOU, to the U.S. ATTORNEY'S OFFICE, or to DIAMOND, by any witness RELATING TO YOUR INVESTIGATION or other investigations of the same or related issues, including, but not limited to, transcripts of such statements and notes or memoranda of such statements, regardless of who took or made such notes or memoranda.
>
> **INTERROGATORY NO. 2**
>
> Please IDENTIFY any and all information bearing on the credibility of any witness YOU may use to support YOUR claims, including, but not limited to:  1) any discussion with the witness or his/her representative, including, but not limited to, any attorney, by YOU or the U.S. ATTORNEY'S OFFICE of any benefit to the witness of any kind, including, but not limited to, issuing, or refraining from issuing, one or more subpoenas, not filing charges, filing lesser charges, and/or seeking or recommending reduced sanctions or penalties or punishment; 2) any statements or testimony by the witness or his/her representative that contradict or materially alter statements or testimony previously made by the witness, including but not limited to any contradictions or alterations that followed any discussion of any benefit to the witness; and 3) any statements or other information that impeach or otherwise undermine any statements or the credibility of the witness.

The discovery requests presumably defined the capitalized terms from Request for Production No. 3 and Interrogatory No. 2. Those definitions, however, remain largely unknown to the undersigned judge as this record does not have any complete copy of his requests for production or his interrogatories. One definition, however, was made available for "U.S. ATTORNEY'S

2

OFFICE" in Request for Production No. 3, with that phrase encompassing "any employee or representative of the U.S. Department of Justice, including, but not limited, to any employee or representative of the United States Attorney's Office for the Northern District of California or the Federal Bureau of Investigation" (*id.* Exh. 1 at ¶ 9).

In any event, the Commission responded to Request for Production No. 3 and Interrogatory No. 2 with several objections (*id.* Exh. 2 at 7; Exh. 4 at 4–5) (emphasis added):

**RESPONSE AND OBJECTIONS TO REQUEST NO. 3**

\*       \*       \*

*The Commission further objects to the Request to the extent it seeks privileged information and attorney work product*, including without limitation materials protected by attorney-client privilege, deliberative process privilege, other governmental privileges, and privileged intra-agency or inter-agency communications, trial preparation materials, *and work product prepared in anticipation of litigation. The Commission intends to protect the analysis, mental impressions, and work product inherent in its notes and memoranda of witness interviews conducted by, and at the direction of, its attorneys and staff and will not produce its interview notes and memoranda prepared in anticipation of litigation.* . . . .

**RESPONSE AND OBJECTIONS TO INTERROGATORY NO. 2**

\*       \*       \*

The Commission has no obligation to compile and correlate facts, information, or evidence that may relate or bear on credibility.  The Commission also does not have an obligation under the *Brady* doctrine or any other rule or principle to review all available materials for facts that may be exculpatory or impeach a witness.  Because this is a civil case governed by the Federal Rules of Civil Procedure, the discoverable information sought by this interrogatory is equally available to the Defendant.  The Commission also objects because the Commission is not required at this point in the litigation to identify the witnesses on whose testimony it may rely to support its factual contentions at trial.

Without waiving and subject to the above objections, the Commission responds as follows:  Interviews with the following witnesses, conducted on the dates indicated, were covered by a letter agreement between the witness and the Commission:  Debra Donaghy, September 17, 2012, Eric Heidman, August 28, 2012, Steve Zaffarano, November 5, 2012 and June 26, 2013.  The Division of Enforcement entered a cooperation agreement with Jim Tropp, dated October 10, 2013.  The Commission will produce copies of the letters and agreement.  The Commission is not aware of any decisions between any potential witness and the

3

Department of Justice that may constitute a "benefit to the witness."

The Commission also provided defendant with a list of its interviews, including information about witness names, interview dates, interview type (*e.g.*, voluntary or subpoena), and other details (Dkt. No. 31-2).

Defendant, however, seeks to enforce Request for Production No. 3 and Interrogatory No. 2 so as to reach the Commission's raw notes and memoranda from its informal interviews of voluntary witnesses. The Commission objects, claiming qualified privilege under Federal Rule of Procedure 26(b)(3)(A). After full briefing and oral argument, and supplemental briefing from both sides, this order decides as follows.

## ANALYSIS

Rule 26(b)(3)(A) provides the governing authority (emphasis added):

> **Documents and Tangible Things.** Ordinarily, a party may not discover documents and tangible things that are *prepared in anticipation of litigation or for trial* by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has *substantial need* for the materials to prepare its case and cannot, *without undue hardship*, obtain their substantial equivalent by other means.

At hearing, the parties disputed whether the Commission's raw notes and memoranda were "prepared in anticipation of litigation or for trial." Defendant contends that those documents were merely part of the Commission's fact-gathering investigation. The Commission disagrees, arguing that its raw notes and memoranda were prepared for potential litigation (among other reasons).

Where a document serves a dual purpose — *i.e.*, the document "was not prepared exclusively for litigation" — our court of appeals applies the "because of" test:

> Dual purpose documents are deemed prepared because of litigation if in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation. In applying the "because of" standard, courts must consider the totality of the circumstances and determine whether

4

> the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.

*United States v. Richey*, 632 F.3d 559, 567–68 (9th Cir. 2011) (internal quotations omitted); *see also In re Grand Jury Subpoena*, 357 F.3d 900, 907–08 (9th Cir. 2004).

Here, the record demonstrates that the Commission prepared its raw notes and memoranda "in anticipation of litigation or for trial." In that connection, the Commission has submitted a declaration from Attorney Jessica Lee, who "had primary responsibility for the Division of Enforcement's investigation regarding Diamond" and had "drafted and signed the complaint in this action" (Lee Decl. ¶ 3). She states (*id.* ¶¶ 4–6, 9):

> During the investigation, I reviewed a Form 8-K that Diamond filed with the Commission on November 1, 2011. In that filing, Diamond announced that its Audit Committee had decided to perform an investigation regarding "the accounting for certain crop payments to walnut growers" . . . . The Commission's preliminary investigation began around this time.
>
> \*         \*         \*
>
> On December 5, 2011, the Commission issued the formal order of investigation . . . bearing the caption "In the Matter of Diamond Foods, Inc." and the case number, SF-3778 . . . . *The Formal Order directs the Commission staff to determine whether any persons or entities violated the federal securities laws,* and authorizes the designated staff to issue subpoenas for documents and testimony . . . .
>
> \*         \*         \*
>
> I also reviewed a Form 8-K that Diamond filed with the Commission on February 8, 2012. In it, Diamond's Audit Committee announced that it determined that the company's previously-filed financial statements for the fiscal years 2010 and 2011 "should no longer be relied upon" and would be required to be restated. Diamond also announced that CFO Steven Neil and CEO Michael Mendes were placed on administrative leave, and that a new CEO and CFO had been appointed . . . .
>
> \*         \*         \*
>
> In around April 2012, I and other Commission staff began contacting witnesses . . . .

The Commission, in other words, did not start its informal interviews until *after* Diamond had conducted its own investigation and placed defendant on administrative leave, and *after* the Commission had issued the formal order of investigation. Indeed, the formal order stated that

5

"[t]he Commission *has information that tends to show*" how Diamond and/or its officers may have been "[i]n possible violation" of several federal securities laws, since at least January 1, 2010 (Lee Exh. 2 at 1–3) (emphasis added).

But there is more. Attorney Lee further declares that she created the raw notes and memoranda "*to prepare for litigation*, with the anticipation that the Commission could authorize an action against individuals or entities involved in the financial reporting, including Diamond . . ." (Lee Decl. ¶ 11) (emphasis added). Although she questioned voluntary witnesses to determine whether or not to recommend charges to the Commission, she also prepared raw notes and memoranda with litigation-specific purposes in mind: to "contain [her] thoughts, impressions, opinions, and conclusions regarding information relevant to the case theories at the time," to "aid any litigation that could be authorized by the Commission," and "to appl[y] the facts learned in the investigation to the legal requirements for proving violations of federal securities laws at a trial in a district court action or at an administrative proceeding before an Administrative Law Judge . . ." (*id.* ¶¶ 12–14). Considering the totality of these circumstances, it can be fairly said that the Commission's raw notes and memoranda were created "because of the prospect of litigation." *Richey*, 632 F.3d at 568.

Defendant disagrees, asserting that the Commission must identify "when it actually decided that litigation was anticipated" (Supp. Br. at 2). That Attorney Lee "gathered facts and information with the anticipation that the Commission *could* authorize an action" is insufficient because that presents nothing more than a theoretical possibility of litigation, at least in defendant's view (Lee Decl. ¶ 11) (emphasis added).

This order finds otherwise. Even if the Commission prepared its raw notes and memoranda to aid its decision on bringing an action, such documents can still merit the qualified protections of Rule 26(b)(3)(A). The test is whether, "given the totality of the circumstances," the raw notes and memoranda were "created because of anticipated litigation and would not have been created in substantially similar form but for the prospect of litigation." *Richey*, 632 F.3d at 568. To that end, Attorney Lee has declared that she created the raw notes and memoranda "to prepare for litigation," after the Commission had information suggesting potential violations of

6

1  federal securities laws by Diamond and/or its officers, and after the Commission later issued its
2  formal order of investigation (Lee Decl. ¶ 11; Exh. 2 at 1–3).

3  Nor does *Securities and Exchange Commission v. Thrasher* aid defendant's position.
4  1995 WL 46681 at *3–4 (S.D.N.Y. Feb. 7, 1995) (Magistrate Judge Michael H. Dolinger).
5  There, the magistrate judge considered a motion to compel the production of the Commission's
6  notes, which had were created during interviews with cooperating individuals. *Thrasher*,
7  however, applied a different standard under Rule 26(b)(3)(A) — *i.e.*, the qualified privileged
8  extended "only to documents prepared principally or exclusively to assist in anticipated or
9  ongoing litigation." Moreover, the magistrate judge noted that it was "at least arguable that
10 some or all of the interview notes were not prepared principally or exclusively to assist in
11 anticipated litigation," largely because the Commission had failed to offer testimony regarding
12 those notes, "much less establish the precise purpose of the notes, whether a decision had been
13 made to litigate at the time they were created, whether the Commission was contemplating other
14 alternatives at the time, and whether their notes were treated with the requisite confidentiality."
15 *Id.* at *3. That is not the situation here, where the Commission has supplemented the record with
16 Attorney Lee's declaration, the formal order of investigation, and other relevant exhibits.

17 Defendant, however, counters by arguing that he has a substantial need for the
18 Commission's raw notes and memoranda. He explains that it would be undue hardship to
19 depose the voluntary witnesses himself because they "are *unlikely* to be able to remember what
20 they told the SEC, or whether they made conflicting statements . . . thereby depriving [him] of
21 information he could use to exculpate himself or impeach witnesses offered by the SEC" (Br. at
22 2) (emphasis added).

23 Not so. The Commission began informally interviewing voluntary witnesses in April
24 2012, and defendant could have deposed those witnesses starting in February 2014. Yet
25 defendant has not noticed any depositions to date, despite having received the Commission's
26 detailed list of its interviewed witnesses and having nineteen of those individuals reportedly
27 appear on defendant's own list of initial disclosures. In any event, the present record lacks
28

7

evidence that the witnesses will be "unlikely" to remember what they previously told the Commission, especially as defendant has not yet examined any of those witnesses.

Finally, defendant argues that "the protections of *Brady* and *Giglio* should apply" so that the Commission discloses "witness statements that are exculpatory or constitute impeachment evidence, including any conflicting statements" (Br. at 3). In his view, this action is more akin to a criminal prosecution (rather than a regular civil matter) because witnesses are more likely to participate in informal interviews with the Commission, in light of the agency's investigative powers and its ability to charge and impose severe penalties. Yet defendant has not cited a decision that extends *Brady* or *Giglio* to a civil action, nor has the undersigned judge's own research revealed any such authority. This order therefore declines to apply *Brady* and *Giglio* here.

Accordingly, defendant's discovery request is **DENIED**, subject to the last paragraph of this order.

## CONCLUSION

For the reasons discussed above, defendant's request to enforce Request for Production No. 3 and Interrogatory No. 2 — so that he may obtain the Commission's raw notes and memoranda from its informal interviews with voluntary witnesses — is **DENIED**.

This, however, is without prejudice to a fresh and later discovery request by defendant for the Commission's raw notes and memoranda, based on a witness-by-witness showing of need. For instance, if defendant deposes one of the Commission's voluntary witnesses, and there appears to be a proper basis on which to believe that the witness has forgotten a material part of her statements made during her earlier informal interview with the Commission, defendant may have good cause to obtain those notes from the Commission.

**IT IS SO ORDERED.**

Dated: June 27, 2014.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

8